REQUESTED BY: Senator Raymond "Ray" Janssen
Senator Raymond "Ray" Janssen District 15 Representative Nebraska State Legislature P.O. Box 94604 Lincoln, NE 68509-4604
Dear Senator Janssen:
You have asked five questions related to flavored malt beverages (FMBs), which we have renumbered in the manner addressed in this opinion:
1. Is Neb. Rev. Stat. § 53-103 clear on its face as to how to classify flavored malt beverages?
2. If Neb. Rev. Stat. § 53-103 is not clear on its face, then does the Liquor Control Commission have authority under Neb. Rev. Stat. § 53-116 to determine the classification of FMBs?
3. Is the Liquor Control Commission preempted by the federal regulation and federal law from deciding what manufacturing standards and methods for beer production are in Nebraska, due to Neb. Rev. Stat. § 53-117(2), and therefore must the commission follow the federal regulation with respect to the manufacturing of flavored malt beverages?
4. May the State of Nebraska enact or enforce laws that substantially differ from federal code and regulations which are adopted and followed as the industry standard laws relating to alcohol?
5. Is the statutory change sought in LB 563, 99th Legislature, necessary to put the State of Nebraska in conformity with the Alcohol and Tobacco Tax and Trade Bureau's (TTB) final regulations related to FMBs?
Although the 99th session of the legislature has ended, it is our understanding based on a conversation with your staff that you intend to re-introduce a version of LB 563 in the next legislative session, in the event that it is necessary. Therefore, we will respond to your questions in the order enumerated above.
1. The first question is whether Neb. Rev. Stat. § 53-103 is clear on its face as to how to classify FMBs. As you are aware, FMBs are a mixture of a fermented base of beer with added flavors that usually contain distilled spirits. Neb. Rev. Stat. §53-103(2) and (3) (Reissue 2004), the definitional section of the Nebraska Liquor Control Act, provides that:
(2) "Spirits means any beverage which contains alcohol obtained by distillation, mixed with water or other substance in solution, and includes brandy, rum, whiskey, gin or other spirituous liquors and such liquors when rectified, blended, or otherwise mixed with alcohol or other substances;"
(3) "Beer means a beverage obtained by alcoholic fermentation of an infusion or concoction of barley or other grain, malt, and hops in water and includes, but is not limited to, beer, ale, stout, lager beer, porter, and near beer."
Flavored malt beverages could be considered beer because under Nebraska's statutory definition, they are "a beverage obtained by alcoholic fermentation of an infusion or concoction of barley or other grain, malt, and hops in water . . ." Likewise, flavored malt beverages could be considered distilled spirits because they are "any beverage which contains alcohol obtained by distillation."
An ambiguity exists in a statute when "reasonable persons can find different meanings and good arguments can be made for either of the two contrary positions as to the meaning of the statute." (Black's Law Dictionary, 6th Ed. 1991). A latent ambiguity exists when "the language employed is clear and intelligible, but some extrinsic fact creates a necessity for a choice among two or more possible meanings." Id. Flavored malt beverages create that necessity for a choice among two different meanings and § 53-103
is, therefore, ambiguous.
2. You have further asked whether, if Neb. Rev. Stat. § 53-103
is not clear on its face, the Liquor Control Commission has the authority under Neb. Rev. Stat. § 53-116 to determine the classification of flavored malt beverages. The answer to this question is yes. The Liquor Control Commission has broad authority under Neb. Rev. Stat. § 53-116 to regulate the manufacture, distribution and sale of alcohol. As that statute provides: "The power to regulate all phases of the control, manufacture, distribution, sale and traffic of alcoholic liquor, except as specifically delegated in the Nebraska Liquor Control Act, is vested exclusively with the Commission." Since § 53-103
is capable of more than one interpretation, the Commission would have the authority to determine the classification of flavored malt beverages.
3. You have further asked whether, due to Neb. Rev. Stat. §53-117(2), the Commission is preempted by federal regulation or law from deciding what manufacturing standards and methods for beer production are in Nebraska. The answer to this question is yes. That section states that the Commission shall have the power:
(2) To fix by rules and regulations the standards of manufacture of alcoholic liquor not inconsistent with federal laws in order to insure the use of proper ingredients and methods in the manufacture and distribution thereof and to adopt and promulgate rules and regulations not inconsistent with federal laws for the proper labeling of containers, barrels, casks, or other bulk containers or of bottles of alcoholic liquor manufactured or sold in this state (Emphasis supplied).
This provision of the statute appears to evidence a legislative intent to submit to federal law on issues related to manufacture and labeling of alcohol. Therefore, while the Commission may have the authority to determine the classification of flavored malt beverages, such standards as to manufacture and labeling must be consistent with federal law.
4. You have further asked whether "the State of Nebraska may enforce or enact laws which substantially differ from federal code and regulations which are adopted and followed as the industry standard laws relating to alcohol." This question raises the issue of federal preemption of state law. As set forth below, the answer to this question is "yes." However, a legislative change to § 53-117(2) would be necessary if the State of Nebraska desires to depart from federal guidelines relating to the standards of manufacture and labeling of flavored malt beverages.
The Supremacy Clause of the U.S. Constitution, Article IV, Cl. 2, provides that the laws enacted by the federal government shall be the "supreme law of the land." The Supremacy Clause controls over any state laws which "interfere with or are contrary to" federal law. Hillsborough County v. Automated Medical Laboratories, Inc., 471 U.S. 707, 712 (1985) (quoting Gibbons v. Ogden, 9 Wheat 1, 211 (1824)). In addition to acts of Congress, federal regulations can preempt state law. Louisiana Public Service Comm'n v. FCC, 476 U.S. 355 (1986). In order to determine whether federal law preempts state law on an issue, however, it must be determined whether Congress intended such preemption. Zannini et al., v. Ameritrade Holding Corp., 266 Neb. 492,667 N.W.2d 222 (2003). Congressional intent is the "touchstone" of preemption. Retail Clerks Int'l Ass'n v. Schermerhorn,375 U.S. 96, 103 (1975). The Supreme Court has held that a preemption analysis "start[s] with the assumption that the . . . . powers of the States . . . were not to be superseded . . . . . unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).
The TTB's federal regulations related to FMBs, 27 CFR Parts 7
and 25, were adopted and went into effect January 3, 2006. The TTB adopted these regulations defining FMBs based on its authority under the labeling provisions of the Federal Alcohol Administration Act (FAA Act), 27 U.S.C. § 205(e), and the Internal Revenue Code (IRC). Flavored Malt Beverages and Related Regulatory Amendments, 70 Fed. Reg. 1, 214 (Jan. 3, 2005) (to be codified at 27 CFR Parts 7 and 25).
The FAA Act provides that the standards of labeling and advertising set forth in the Act apply to malt beverages sold and shipped into any state only to the extent that similar requirements are imposed by the states. 27 U.S.C. § 205. Further, in adopting the regulations for FMBs pursuant to the Act, the TTB expressly stated that it did not intend to preempt the States on the issues of classification and taxation of FMBs:
"Pursuant to the 21st Amendment, States have significant authority to regulate the sale and distribution of alcohol beverages within their borders. Under the . . . . . . FAA Act, Federal labeling and advertising regulations apply to malt beverages only to the extent that the State has adopted similar requirements for malt beverages sold within the State. . . . . We do not believe that the adoption of a different standard by some states will cause major problems to the beer industry; in any case, it is beyond TTB's authority to control what the States choose to do on this issue." Flavored Malt Beverages and Related Regulatory Amendments, 70 Fed. Reg. 1, 219 (Jan. 3, 2005) (to be codified at 27 CFR Parts 7 and 25).
Additionally, TTB stated:
 "As already noted in this preamble, while most States look to Federal guidance in this area and rely on Federal classification of alcohol beverages, there is certainly no requirement for them to do so. Thus, individual States may take a different view of the classification and taxable status of these products, and may reclassify FMBs as distilled spirits products, perhaps even before the effective date of this final rule." Flavored Malt Beverages and Related Regulatory Amendments, 70 Fed. Reg. 1, 230 (Jan. 3, 2005) (to be codified at 27 CFR Parts 7 and 25).
Therefore, under federal preemption standards, the State is not precluded from enacting or enforcing laws that substantially differ from federal laws relating to the classification of flavored malt beverages. However, as discussed earlier in this opinion, § 53-117(2) appears to evidence a legislative intent to submit to federal law on issues of manufacture and labeling, and such statutory provision would need to be amended if the State intends to depart from federal law.
5. Finally, you have asked whether the statutory change sought by LB 563, 99th Legislature, is necessary to put the State of Nebraska in conformity with the Alcohol and Tobacco Trade Bureau's (TTB) final regulations related to FMBs. Because it is our opinion that § 53-103 is ambiguous and the Commission has the authority to implement the TTB regulations, the statutory change sought by LB 563, while helpful in clarifying the legislature's intent related to FMBs, would not be necessary.
 Sincerely, JON BRUNING Attorney General
 Milissa Johnson-Wiles Assistant Attorney General
 Approved: ____________________________ Attorney General